FILED

2022 Jun-14  AM 08:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **STEPHEN E. WITMER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 3:22-cv-00317-LCB** |
| | ) | |
| **SAMUEL BRUCE BATES,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION & ORDER

Before the Court is Defendants' Motion to Dismiss. (Doc. 15). In essence, Defendants contend that Witmer failed to join an indispensable party as required by Federal Rule of Civil Procedure 19. The parties have fully briefed the motion, and it is ripe for review. For the reasons that follow, the Court **GRANTS** Defendants' motion to dismiss.

## BACKGROUND

The relevant facts relate to an amendment to an agreement. The broader dispute centers on the Cherokee Industrial Landfill in Cherokee, Alabama.[1] In 2017, the Cherokee Solid Waste Disposal Authority purchased the real property containing the landfill in Colbert County, Alabama from Defendant P&F Industrial Enterprises,

---

[1] (Doc. 1 at ¶ 10).

Inc.[2] CWI Alabama, LLC ("CWI-AL") leased the property from the Authority to operate the landfill.[3] As consideration for the transaction, P&F transferred assets including Solid Waste Disposal Permit No. 17-10 to CWI-AL for the landfill's operation.[4] In return, CWI-AL and P&F entered into a Royalty Agreement on December 12, 2019.[5]

In 2020, the Authority sold the landfill to a third party.[6] The next year, a dispute over disposal fees at the landfill arose between various parties not relevant to this case.[7] P&F, however, apparently became concerned about the disposal fee dispute, and Witmer alleges that it responded by luring him to a meeting where the Defendants coerced him into signing an amendment to the Royalty Agreement.[8] Ultimately, Witmer signed the amendment to the Royalty Agreement purporting to make him personally jointly and severally liable for all future royalty payments due under the Agreement.[9] Important here, P&F, Witmer in his individual capacity, and CWI Cherokee, LF, LLC ("CWI-Cherokee") are all parties to the amendment.[10]

---

[2] *Id.* at ¶ 11.

[3] *Id.*

[4] *Id.* at ¶ 12.

[5] (Docs. 1 at ¶ 12; 1-1).

[6] (Doc. 1 at ¶¶ 16-20).

[7] *Id.*

[8] *Id.* at ¶¶ 21-35. The Court will spare the titillating details of the episode alleged by Witmer, involving a trap under the cover of night and assault by baseball bat.

[9] (Docs. 1 at ¶ 36; 1-2).

[10] (Doc. 1-2). Curiously, neither Witmer nor the Defendants take issue with the fact that CWI-AL is the party to the Royalty Agreement, but CWI-Cherokee is the party to the amendment.

On March 10, 2022, Witmer filed his complaint in this Court.[11] The complaint includes a litany of state law tort claims and a request for a declaratory judgment that the amendment to the Royalty Agreement is void and unenforceable.[12] After all summons were returned executed, on March 14, Witmer moved for a temporary restraining order and a preliminary injunction.[13] The Court denied Witmer's motion for a TRO.[14] Soon after, the parties began remarkably contentious litigation in preparation for the hearing on the preliminary injunction. In the midst of a flurry of motions and responses, Defendants filed this motion to dismiss on April 1, 2022.[15] Defendants move the Court to dismiss Witmer's case under Rule 12(b)(7), arguing in essence that Witmer failed to join an indispensable party required by Rule 19.

## DISCUSSION

In their briefs, the parties argue at length about irrelevant legal issues and spend inordinate time and energy disputing—in painstaking detail—inconsequential facts, including signatories to various contracts and agreements irrelevant to this case. After clearing the underbrush, the only cognizable issue before the Court is compulsory joinder under Rule 19. Specifically, whether CWI-Cherokee, as a party to the amendment, is an indispensable party. Because Witmer specifically seeks the

---

[11] (Doc. 1).
[12] (Doc. 1 at 8-13).
[13] (Docs. 7; 8).
[14] (Doc. 9).
[15] (Doc. 15).

amendment's rescission, the Court finds that it cannot accord complete relief without CWI-Cherokee. And because CWI-Cherokee would destroy complete diversity and deprive this Court of its original jurisdiction, the Court agrees with Defendants that it must dismiss the case.

## I.    CWI-Cherokee is an indispensable party under Rule 19.

Joinder of parties is generally the plaintiff's prerogative. "The American adversary system of litigation reposes great discretion in the plaintiff to structure litigation. Among other choices, the plaintiff has the option of whether, and to what extent, to use the permissive party joinder provisions of Rule 20 to join multiple plaintiffs or multiple defendants." 4 *Moore's Federal Practice* § 19.02[1] (Matthew Bender 3d. Ed.). But the plaintiff's discretion is not unlimited. The compulsory joinder doctrine serves as the most prominent exception to the plaintiff's autonomy in structuring litigation.

### A.    Rule 19's Structure

The Federal Rules of Civil Procedure codify the compulsory joinder doctrine in Rule 19. In general, joinder deals with three classes of parties: proper, necessary, and indispensable. "These three types of parties . . . may be seen as increasingly narrow concentric circles." 4 *Moore's Federal Practice* § 19.02[2][a] (Matthew Bender 3d Ed.). The permissive joinder doctrine—and its codification at Rule 20—cover proper parties, which is not at issue here. Instead, the issue is compulsory

joinder. "Under the compulsory party joinder rule, when a person not joined in the pending case (an "absentee") is, required to be joined if feasible, the court will override plaintiff's preferred structure by forcing joinder of that absentee." *Id.* at § 19.02[2][c]. When compulsory joinder is in play, the classes of necessary and indispensable drive the analysis.

The distinction between necessary and indispensable is important. Much like rhombuses and squares, all indispensable parties are necessary, but not all necessary parties are indispensable. Necessary parties are "persons having an interest in the controversy, and who ought to be made parties, in order that the court may act". *Shields v. Barrow*, 58 U.S. (17 How.) 130, 139 (1855). Indispensable parties are "[p]ersons who not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Id.* Put another way, a necessary party is a party that *should* be in the case, while an indispensable party is a party that *must* be in the case.

As stated above, Rule 19 formally codifies the compulsory joinder doctrine:

(a) Persons Required to be Joined if Feasible

(1) *Required Party*. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

> (i) as a practical matter impair or impede the person's ability to protect the interest; or

> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

. . .

(b) When Joinder is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

> (2) the extent to which any prejudice could be lessened or avoided by:

> > (A) protective provisions in the judgment;

> > (B) shaping the relief; or

> > (C) other measures;

> (3) whether a judgment rendered in the person's absence would be adequate; and

> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

In working through the Rule, courts have established a three-stage analysis:

> A Rule 19 motion poses "three successive inquiries." [*EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2004)]. "First, the court must determine whether a nonparty should be joined under Rule 19(a)." *Id.* That nonparty (or "absentee") is now referred to as a "person required to be joined if feasible." If an absentee meets the requirements of Rule 19(a), "the second stage is for the court to determine whether it is feasible to order that the absentee be joined." *Id.* "Finally, if joinder is not feasible, the court must determine at the third stage whether the case can proceed without the absentee" or whether the action must be dismissed. *Id.*

*EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010). That is, first the court determines if the party is necessary under Rule 19(a). Next, the court determines if the necessary party can feasibly join the action. If the party cannot feasibly join, the Court then must determine if the case can proceed without them. Only when the Court determines that the case cannot proceed without the absentee is that party labelled indispensable. When a party is indispensable, the case is dismissed.

### B.    Analysis Under Rule 19

The Court will now analyze whether CWI-Cherokee is an indispensable party under Rule 19 using the three-stage process explained above.

#### 1.    *CWI-Cherokee is a Necessary Party*

The first step of the analysis requires the Court to determine if CWI-Cherokee is a necessary party. Rule 19's text provides that a party can be necessary in three ways. First, a party is necessary if the court "cannot accord complete relief among

existing parties" without joinder of the absentee. Fed. R. Civ. P. 19(a)(1)(A). Second, a party is necessary if it "claims an interest relating to the subject of the action" and final relief would "as a practical matter impair or impede the person's ability to protect the interest". Fed R. Civ. P. 19(a)(1)(B)(i). Third, a party is necessary if it "claims an interest relating to the subject of the action" and final relief would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii).

The necessary party analysis here, despite vigorous protest from Witmer, is straightforward. Put simply, "[g]enerally . . . courts will find parties to a contract to be necessary in an action to set aside the contract." 4 *Moore's Federal Practice* § 19.06[4] (Matthew Bender 3d Ed.). That is, in an action to find an agreement unenforceable, like this one, all parties to that agreement are necessary parties under Rule 19. The logic is clear. First, it is a well-established principle that to cancel an instrument, all parties to the instrument must be before the court. *See Northrop Corp. v. McDonnel Douglas Corp.*, 705 F.2d 1030, 1044 (9th Cir. 1983) ("[A]ll parties who may be affected by a suit to set aside a contract must be present".); *accord Shields*, 58 U.S. at 140 ("A bill to rescind a contract affords an example of this kind, For, if only a part of those interested in the contract are before the court, a decree of recission must either destroy the rights of those who are absent, or leave the contract

8

in full force".). The underlying theory of requiring every party to a contract to appear for that contract's destruction is the court's ability to accord complete relief. In other words, requiring all parties to a contract to appear in an action to rescind the contract ensures that the court may completely destroy the instrument. Thus, this requirement implicates Rule 19(a)(1)(A) and the court's ability to "accord complete relief" among the existing parties. Because CWI-Cherokee is a party to the agreement, and Witmer asks the Court to destroy the instrument, it is a necessary party under Rule 19(a).

Witmer raises several arguments in his response about why CWI-Cherokee is not a necessary party. None of his arguments succeed. First, he argues that "the Amendment gives CWI-Cherokee no rights and does not bind CWI-Cherokee to any new obligations; CWI-Cherokee remains bound under the Royalty Agreement with or without the Amendment." (Doc. 24 at 10). This argument misses the mark by focusing on the original Royalty Agreement and not the amendment itself.

The amendment creates new rights and obligations because it makes Witmer and CWI-Cherokee jointly and severally liable. An agreement of joint and several liability between co-obligors creates a suretyship between the co-obligors. 9 *Corbin on Contracts* § 52.2 (2021); 12 *Williston on Contracts* § 36:16 (4th Ed.); *see also U.S. Fid. & Guar. Co. v. Naylor*, 237 F. 314, 316 (8th Cir. 1916) ("The test of cosuretyship is a common liability for the same debt or burden."). Most importantly,

9

this relationship creates an implied contractual right to contribution between the co-obligors. *See Amphibious Partners, LLC v. Redman*, 534 F.3d 1357, 1362 (10th Cir. 2008). Going further into the weeds of suretyships and rights of contribution is not necessary. Rather, this illustrates that the amendment creates new obligations and rights for CWI-Cherokee.

Second, Witmer argues that CWI-Cherokee has not claimed an interest in the litigation or the agreement, so its "interests would not be impaired or impeded as a practical matter". (Doc. 24 at 11). Ultimately, this argument is irrelevant because it attacks CWI-Cherokee's necessary party status under the wrong prong of Rule 19(a). As explained above, CWI-Cherokee, as a party to the instrument that Witmer seeks to destroy, is necessary so that the Court may accord complete relief. Reiterating at the risk of repetition, to cancel an instrument, all parties to the instrument must be before the court. *See Northrop*, 705 F.2d at 1044. Whether CWI-Cherokee has affirmatively claimed an interest does not affect the Court's ability to rescind the amendment.

Third, Witmer similarly asserts that because CWI-Cherokee has not claimed an interest in the litigation or the agreement, there is no risk of multiple litigation or inconsistent obligations. (Doc. 24 at 11). This argument fails for the same reason. That is, CWI-Cherokee is not necessary because it has claimed an interest, but because the Court cannot rescind the amendment without it.

Therefore, because CWI-Cherokee is a party to the amendment and Witmer asks the Court to rescind the amendment, and because the Court cannot rescind the amendment without all the parties, the Court cannot accord complete relief and CWI-Cherokee is a necessary party under Rule 19.

### 2. *CWI-Cherokee Cannot Feasibly be Joined*

Moving on to stage two, the Court must determine if CWI-Cherokee, as a necessary party, can feasibly join the action. Defendants argue that CWI-Cherokee would destroy Witmer's claim to subject matter jurisdiction. Rule 19's text specifically mentions that a party "whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if" it is a necessary party. Fed. R. Civ. P. 19(a)(1). Indeed, if subject matter jurisdiction does not support a claim, "joinder is not feasible under the compulsory party joinder rule and the court must then address the question of whether to proceed without the absentee or dismiss the pending case". 4 *Moore's Federal Practice* § 19.04[1][a]. Witmer's only claim to jurisdiction in this case is diversity jurisdiction. (Doc. 1 at ¶¶ 6-8). So, if CWI-Cherokee's citizenship defeats diversity jurisdiction, joinder is not feasible.

Diversity jurisdiction requires complete diversity between the parties. The Supreme Court has explained that "[i]n a case with multiple plaintiffs and multiple defendants, the presence in the action of a single plaintiff from the same State as a single defendant deprives the district court of original diversity jurisdiction over the

entire action." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005) (citations omitted). All defendants in this case are citizens of Alabama. (Doc. 1 at ¶ 7).

Complicating the analysis is CWI-Cherokee's status as a limited liability company. The Eleventh Circuit has made clear that "the general rule for unincorporated entities also applies to limited liability companies, in the absence of Congress's extending the treatment given to corporations." *Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) (citing *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998)). Which means "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens*, 374 F.3d at 1022. Here, Witmer explains that CWI-Cherokee's sole member is another LLC. (Doc. 24 at 3-4). "[W]here an LLC has, as one of its members, another LLC, 'the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be' to determine the citizenship of the LLC." *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (quoting *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003)).

In his response, Witmer admits that CWI-Cherokee's sole member is an LLC with members that are citizens of Georgia and Alabama. (Doc. 24 at 3-4). Accordingly, CWI-Cherokee is a citizen of Georgia and Alabama. And all the

defendants are citizens of Alabama. Meaning, ultimately, that CWI-Cherokee, as a plaintiff, is a citizen of the same state as the defendants. Thus, joinder of CWI-Cherokee would destroy complete diversity and defeat Witmer's only claim to federal jurisdiction. Therefore, joinder of CWI-Cherokee is not feasible under Rule 19, and the Court will proceed to the third stage of the Rule 19 analysis.

### 3. *CWI-Cherokee is an Indispensable Party*

Because CWI-Cherokee is a necessary party and its joinder is not feasible, the Court proceeds to the third stage of the analysis: whether the Court can proceed with this case without CWI-Cherokee or if CWI-Cherokee is indispensable. To reiterate, indispensable parties "not only have an interest in the controversy, but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience." *Shields*, 58 U.S. at 139.

Rule 19(b) guides the analysis. "If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). The four factors include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

*Id.* While the statutory factors are important, the Supreme Court has stressed that "the determination whether to proceed will turn upon factors that are case specific, which is consistent with a Rule based on equitable consideration." *Philippines v. Pimentel*, 553 U.S. 851, 862-63 (2008). Which is to say, the analysis is pragmatic, fact specific, and guided by the case's unique equities.

Turning to the factors, the equities in this case suggest the Court should dismiss the case. The first factor is not dispositive. Whether judgment in either direction would prejudice any of the parties is, on its face, unclear. The other three factors, however, strongly weigh in favor of dismissal. The second statutory factor is an invitation to courts to creatively shape relief in the necessary party's absence. One notable example is *Campbell v. Triangle Corp.*, 56 F.R.D. 480, 482 (E.D. Pa. 1972), where the court retained a recission action by awarding monetary damages instead of destroying the instrument. The unique facts of this case do not permit a similar compromise. The amendment that Witmer seeks to invalidate is not orthogonal to his other claims. Rather, the complaint makes clear that the Defendants

allegedly engaged in the tortious activity with the sole purpose of securing Witmer's signature to the amendment. That is, the amendment itself is central to all of Witmer's claims. Awarding relief on his tort claims but not invalidating the amendment would certainly benefit Witmer financially but would fail to adequately address the root cause of this dispute. Because the amendment's recission is the critical issue in this case, the Court is unable to shape relief to save the case without CWI-Cherokee. Thus, the second factor weighs in favor of dismissal.

The third factor also weighs in favor of dismissal. Importantly, the intent is not to address the adequacy of the judgment from the plaintiff's point of view. Rather, the intent is to address the adequacy of the dispute's resolution. The concern is "that of the courts and the public in complete, consistent, and efficient settlement of controversies," that is, the "public stake in settling disputes by wholes whenever possible." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). As briefly alluded to above, in CWI-Cherokee's absence, the Court could only proceed on Witmer's state law tort claims. Clearly, addressing only the tort claims but not the agreement itself would fail to "settl[e] [the] dispute[] by whole[]". *Id.* Thus, the third factor weighs in favor of dismissal.

The Court believes that the fourth factor is dispositive. Courts routinely consider, when asking if an adequate remedy exists outside the current case, if relief is available in state court. *See, e.g., Angst v. Royal Maccabees Life Ins. Co.*, 77 F.3d

701, 706 (3d Cir. 1996) ("[Plaintiff] will have an adequate remedy by way of the existing state court action, which involves all of the parties he desires to have included in his federal action."). That inference could not be stronger here. The Court sees no reason why this same case could not proceed in an Alabama state court. And the case could proceed with CWI-Cherokee as a co-plaintiff. Further, the alleged tortious activity occurred in March 2022, meaning that the statute of limitations will serve no bar to refiling this action. In short, Witmer could pursue this exact action, with all necessary parties, in an Alabama state court, so the fourth factor weighs heavily in favor of dismissal.

Underlying this entire analysis is the familiar maxim that a contract's recission requires all parties to the contract. "Numerous cases hold that 'an action seeking recission of a contract *must be dismissed* unless all parties to the contract, and others having a substantial interest in it, can be joined.'" *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 788 (D.C. Cir. 1983) (emphasis added) (quoting *Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 81-82 (1st Cir. 1982); citing *Northrop*, 705 F.2d at 1044, *cert. denied*, 464 U.S. 849 (1983); *Crouse-Hinds Co. v. Internorth, Inc.*, 634 F.2d 690, 701 (2d Cir. 1980); *Chiodo v. General Waterworks Corp.*, 380 F.2d 860, 866-67 (10th Cir.), *cert. denied*, 389 U.S. 1004 (1967)); *see also Deschutes River All. v. Portland GE,* 1 F.4th 1153, 1163 (9th Cir. 2021); *accord Chance v. Buxton*, 163 F.2d 989, 990 (5th Cir. 1947) ("The general rule is that all parties to the

instrument sought to be cancelled are indispensable parties to the suit for cancellation, unless it is obvious that the one not joined has no interest whatever in the subject matter of the suit.").[16] Frankly, as the discussion above makes clear, CWI-Cherokee's absence from this case severely handicaps the Court and its ability to accord complete relief.

Witmer essentially advances one argument in his response against dismissal for non-joinder of CWI-Cherokee. He argues that CWI-Cherokee has claimed no interest in the litigation or the subject, so dismissal would prejudice Witmer. (Doc. 24 at 16). His argument fails for three reasons. First, Witmer appears to confuse the stages of the Rule 19 analysis. That is, his argument, as best the Court can tell, is nothing more than him re-raising his argument that CWI-Cherokee is not a necessary party because it has not affirmatively claimed an interest in the litigation. Stage three is not concerned with the individual parties, but with society's interest in completeness in litigation and judicial economy. *See Provident Tradesmens Bank & Trust*, 390 U.S. at 111.

Second, if Witmer attempts to argue that rescission is not improper here because CWI-Cherokee is not interested in the subject, his own arguments contradict his premise. Witmer explains in his response that the LLC shell game behind CWI-

---

[16] The Eleventh Circuit, in the *en banc* decision of *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), adopted as precedent the decisions of the former Fifth Circuit decided before October 1, 1981.

Cherokee ultimately results in Witmer's sole control over CWI-Cherokee. (Doc. 24 3-4). Witmer, in short, argues on one hand that CWI-Cherokee is a separate entity with no interest in the case's subject, but on the other hand argues that CWI-Cherokee is essentially a corporate farce under Witmer's control. The Court will not allow Witmer to have his cake and eat it too.

Third, the Court again stresses that Witmer will face no prejudice whatever through dismissal under Rule 19. The doors to state court are wide open. There is no reason, to the Court's knowledge, why Witmer could not refile in state court, with all relevant parties. Further, the state court would be able to do what this Court cannot: accord complete relief on all Witmer's claims. Put simply, the equities in this case weigh strongly in favor of dismissal because this Court cannot grant complete relief while an alternative forum could.

Thus, because Witmer seeks rescission of the amendment, and a party to the amendment cannot be joined, the case must be dismissed.

## <u>CONCLUSION</u>

For these reasons, the Defendants' motion to dismiss (Doc. 15) is **GRANTED**. This case is **DISMISSED without prejudice** under Rule 12(b)(7).

**DONE** and **ORDERED** this June 13, 2022.

**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE